STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JERALD GRAHAM; EILEEN D. HINES, A MARRIED COUPLE, | CIV. NO. 18-00456 LEK-KJM |
| Plaintiffs, | |
| vs. | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A/ CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST, | |
| Defendant. | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On October 30, 2019, Defendant Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust ("Wilmington"), filed its Motion for Summary Judgment ("Motion"). [Dkt. no. 19.] Pro se Plaintiffs Jerald Graham and Eileen D. Hines ("Plaintiffs") filed their memorandum in opposition on March 6, 2020, and Defendant filed its reply on March 11, 2020. [Dkt. nos. 29, 30.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United

States District Court for the District of Hawaii ("Local Rules").

Defendant's Motion is hereby granted, insofar as summary judgment is granted in favor of Wilmington as to all of Plaintiffs' claims that seek to undo the outcome of Wilmington's state court foreclosure action against Plaintiffs.  In addition, Plaintiffs' statutory claims brought pursuant to federal law are dismissed with prejudice, and Plaintiffs' state law wrongful foreclosure claim is dismissed without prejudice.  In other words, the only claim still at issue in this case is Plaintiffs' wrongful foreclosure claim, and Plaintiffs will be allowed to file an amended complaint to try to cure the defects in that claim which are identified in this Order.

## BACKGROUND

Plaintiffs filed their "Complaint (Claim) for Fraud Denial of Rights" ("Complaint") on November 20, 2018.  [Dkt. no. 1.]  Plaintiffs are a married couple who filed this action to ask this Court to assume jurisdiction over Wilmington Savings Fund Society, FSB v. Graham, et al., Civil No. 11-1-3218-12(BIA), a case litigated in the State of Hawai`i First Circuit Court ("state court" and "Foreclosure Action"), because Plaintiffs allege fraudulent actions occurred in the Foreclosure Action.  [Complaint at pg. 2 (describing Plaintiffs as "husband and wife" and "a married couple" (emphasis omitted)); id. at

2

pg. 5, ¶ A (praying for "this Honorable Court [to] establish Jurisdiction over all matters of this COMPLAINT OF FRAUD, and the matters of" the Foreclosure Action (emphasis in original)).]

Plaintiffs allege: Gloria Rocha committed fraud upon the state court by submitting a declaration in the Foreclosure Action;[1] [Complaint at ¶ 1;] Plaintiffs were denied the right to bid in the public auction for the Foreclosure Action; [id. at ¶ 2;] the instant action constitutes a dispute of the alleged debt at issue in the Foreclosure Action; [id. at ¶ 3;] the Foreclosure Action is an unlawful collection proceeding; [id. at ¶¶ 4-5;] Plaintiffs never agreed to any changes, alterations, or amendments in the terms of the loan that is at issue in the Foreclosure Action; [id. at ¶ 6;] and Wilmington lacked standing to bring the Foreclosure Action because it did not have an original version of Plaintiffs' promissory note, [id. at ¶ 7].

In the instant Motion, Wilmington argues the claims in the Complaint are barred under the *res judicata* doctrine and the Rooker-Feldman doctrine[2] because, in the Foreclosure Action

---

[1] The Declaration in Support of Plaintiff's Motion for Summary Judgment, by Gloria A. Rocha, dated October 20, 2016 ("Rocha Declaration"), is attached to the Complaint as Exhibit AA.  The declaration states Ms. Rocha is an employee of Wilmington's loan servicing agent, Rushmore Loan Management Services, LLC.  [Rocha Decl. at ¶ 1.]

[2] The Rooker-Feldman doctrine was established by the United States Supreme Court in Rooker v. Fidelity Trust Co., 263 U.S.
(. . . continued)

Wilmington obtained a final judgment of foreclosure and a final judgment confirming the foreclosure sale.

## DISCUSSION

### I.   Request for Judicial Notice

Instead of filing a concise statement of facts with supporting documents, as required by Local Rule 56.1, Wilmington submitted a Request for Judicial Notice within the Motion ("Request").  See dkt. no. 19 at 21 of 23 to 23 of 23.  Although this practice is neither encouraged nor condoned, Wilmington's Request for Judicial Notice must be considered.  See Fed. R. Evid. 201(c)(2) ("The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information.").

Wilmington requests judicial notice of the following documents:

-the Complaint for Foreclosure, filed in the Foreclosure Action on December 30, 2011 by Wilmington's predecessor in interest, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing LP ("BOA" and "Foreclosure Complaint"); [Request at ¶ 1, Exh. A (Foreclosure Complaint);]

-the state court docket sheet for the Foreclosure Action, as of October 28, 2019 ("Foreclosure Docket"); [Request at ¶ 2, Exh. B (Foreclosure Docket);]

---

413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

-the Findings of Fact and Conclusions of Law; Order Granting
     Plaintiff's Motion for Summary Judgment and for
     Interlocutory Decree of Foreclosure Filed November 1, 2016
     ("Foreclosure Decision"), and the Judgment entered pursuant
     to the Foreclosure Decision ("Foreclosure Judgment"), both
     of which were filed on September 14, 2017 in the
     Foreclosure Action;[3] [Request, Exh. C;]

-the Order Approving Commissioner's Report and Granting
     Plaintiff's Motion for: (I) Confirmation of Foreclosure
     Sale, Allowance of Costs, Commissions and Fees,
     Distribution of Proceeds, Directing Conveyance and for Writ
     of Possession/Ejectments, and (II) Expungement of
     Improperly Recorded Documents Filed August 30, 2018
     ("Foreclosure Sale Decision"); Judgment ("Foreclosure Sale
     Judgment"); Writ of Possession; and Notice of Entry of
     Judgment, all of which were filed on February 13, 2019 in
     the Foreclosure Action; [Request, Exh. D;] and

-the Order Granting in Part Defendants Jerald Graham and
     Eileen D. Hines' Emergency Motion to Stay Notice by Letter
     of Intent to Dispose of (Alledged) (sic) Abandoned Property
     Dated July 17, 2019 Due to Defendant Being Locked Out &
     Unable to Enter Premises Filed July 31, 2019, which was
     filed on October 9, 2019 in the Foreclosure Action ("Order
     Denying Stay of Ejectment"), [Request, Exh. E].

Although Plaintiffs' memorandum in opposition expresses their

disagreement with the effect of the documents and the rulings

stated therein, Plaintiffs have not argued Wilmington's exhibits

are either inaccurate or incomplete versions of those documents.

        A court may take judicial notice of facts "not subject

to reasonable dispute because" either: the facts are "generally

known within the trial court's territorial jurisdiction;" or

---

[3] According to the Foreclosure Docket, the state court
granted a motion to substitute Wilmington as the plaintiff in
the Foreclosure Action on September 1, 2015.  [Request, Exh. C
at 5.]

they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of "matters of public record" pursuant to Rule 201, but it cannot take judicial notice of disputed facts within those public records.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (discussing judicial notice in the context of a motion to dismiss), cert. denied sub nom., Hagan v. Khoja, 139 S. Ct. 2615 (2019).  The Court will therefore take judicial notice of Wilmington's exhibits because they are public records and Plaintiffs do not dispute that the exhibits are complete and accurate versions of those documents.  See Rule 201(b)(2).

Plaintiffs also attached the following exhibits to their memorandum in opposition:

-the InterestFirst Adjustable Rate Note, dated June 23, 2007, signed by Jerald Graham, to Countrywide Home Loans, Inc. ("Countrywide" and "Note"); [Mem. in Opp., Exh. A;]

-the Mortgage, signed on June 28, 2007 by Plaintiffs as borrowers, with Countrywide as lender, and Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee for Countrywide and Countrywide's successors and assigns, recorded with the State of Hawai`i Bureau of Conveyances ("BOC") in July 2007 ("Mortgage"); [id., Exh. B;]

-the Assignment of Mortgage by MERS of Plaintiffs' Mortgage to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing LP ("BAC"), recorded with the BOC on June 6, 2011 ("Assignment"); [id., Exh. C;] and

-what appears to be an excerpt of an article titled "Fraud Digest | Robo-signed – Who's Signing Now?  Mers,

Assignments and Trusts" from www.4closureFraud.org, dated
July 20, 2011 ("Fraud Digest Article"), [id., Exh. D].
Because Plaintiffs are proceeding pro se, their submission is
liberally construed as a request for judicial notice of their
exhibits.  See, e.g., Hackett v. Bank of New York Mellon, Case
No. 19-cv-00015-DKW-KJM, 2019 WL 3554689, at *2 (D. Hawai`i
Aug. 5, 2019) ("Because [the plaintiff] is proceeding pro se,
the Court liberally construes his filings." (citing Eldridge v.
Block, 832 F.2d 1132, 1137 (9th Cir. 1987))).

        The Mortgage and Assignment are public records, and
the Note is a document that the accuracy and authenticity of
which can be determined from reliable sources.[4]  See
Rule 201(b)(2).  Wilmington argues Plaintiffs' exhibits are
unauthenticated and inadmissible, [Reply at 3,] but Wilmington
does not specifically argue Plaintiffs' Exhibits A, B, and C are
inaccurate or incomplete versions of those documents.  Moreover,
in ruling on the Motion, this Court must view the record in the
light most favorable to Plaintiffs as the non-moving parties,
and all inferences must be drawn in their favor.  See S.R. Nehad
v. Browder, 929 F.3d 1125, 1132 (9th Cir. 2019).  Plaintiffs'
request for judicial notice is therefore granted as to their
Exhibit A (Note), Exhibit B (Mortgage), and Exhibit C

---

[4] In considering Plaintiffs' request for judicial notice,
the Court only considers the documents themselves, and is not
considering the handwritten notations on the documents.

(Assignment).  However, Plaintiffs' request is denied as to
their Exhibit D (Fraud Digest Article) because the article is
not a document that the accuracy and authenticity of which can
be determined from reliable sources.

Judicially noticed documents establish the following:
1) Plaintiffs' property in Waianae ("the Property") was subject
to the Mortgage, which secured a loan evidenced by the Note;
2) MERS, as Countrywide's nominee, executed the Assignment,
assigning Plaintiffs' Mortgage to BAC; 3) BOA, as BAC's
successor, initiated the Foreclosure Action; and 4) the state
court issued the Foreclosure Decision, the Foreclosure Judgment,
the Foreclosure Sale Decision, and the Foreclosure Decision
Judgment.

The Court next turns to the merits of the Motion,
beginning with Wilmington's Rooker-Feldman argument.

## II.  Merits of the Motion

### A.  *Rooker-Feldman* Doctrine

This Court is without jurisdiction to decide this
matter if Plaintiffs' action is essentially an appeal from the
state court's final decisions in the Foreclosure Action:

> Under Rooker-Feldman, a federal district court
> does not have subject matter jurisdiction to hear
> a direct appeal from the final judgment of a
> state court.  The United States Supreme Court is
> the only federal court with jurisdiction to hear
> such an appeal.  Rooker-Feldman is a statute-
> based doctrine, based on the structure and

> negative inferences of the relevant statutes
> rather than on any direct command of those
> statutes.  See, e.g., In re Gruntz, 202 F.3d
> 1074, 1078 (9th Cir. 2000) (en banc) ("Rooker–
> Feldman is not a constitutional doctrine.
> Rather, the doctrine arises out of a pair of
> negative inferences drawn from two statutes: 28
> U.S.C. § 1331 . . . and 28 U.S.C.
> § 1257 . . . .").

Noel v. Hall, 341 F.3d 1148, 1154–55 (9th Cir. 2003)

(alterations in Noel).  Further, a federal district court must

also "refuse to decide any issue raised in the suit that is

'inextricably intertwined' with an issue resolved by the state

court in its judicial decision."  Id. at 1158.

Thus, to the extent that any of the claims in

Plaintiffs' Complaint seek reversal or an appeal of the

Foreclosure Decision, the Foreclosure Judgment, the Foreclosure

Sale Decision, or the Foreclosure Sale Judgment,[5] Wilmington is

---

[5] Plaintiffs could have appealed from the Foreclosure
Judgment, the Foreclosure Sale Judgment, or both.

The primary statute that authorizes a party
to appeal in a foreclosure action is Hawaii
Revised Statutes (HRS) § 667-51(a) (2016).
"Under HRS § 667-51, foreclosure cases are
bifurcated into two separately appealable parts:
(1) the decree of foreclosure and order of sale
appealable pursuant to HRS § 667-51(a)(1) and
(2) all other orders that 'fall within the second
part of the bifurcated proceedings.'"  Bank of
America, N.A. v. Reyes-Toledo, 139 Hawai`i 361,
372, 390 P.3d 1248, 1259 (2017) (quoting Mortg.
Elec. Registration Sys., Inc. v. Wise, 130
Hawai`i 11, 16, 304 P.3d 1192, 1197 (2013)).  A
decree of foreclosure "finally determines the
(. . . continued)

entitled to summary judgment.  Plaintiffs' Complaint does not list specific counts, but they appear to allege the following claims which directly challenge the decisions and judgments in the Foreclosure Action:

-a claim alleging fraud in the Foreclosure Action, based upon the filing of the Rocha Declaration, which Plaintiffs assert was not verified and contained statements about the Note when the declarant only reviewed "alleged" versions of the Note ("Count I"); [Complaint at ¶ 1;]

-a claim seeking to invalidate the foreclosure sale of the Property on the ground that Plaintiffs were improperly denied the right to bid in the public auction of the Property ("Count II"); [id. at ¶ 2;]

-a claim alleging fraud in the Foreclosure Action, based upon Wilmington's failure to respond to Plaintiffs' dispute of their debt prior to the foreclosure, as required by the Fair Debt Collection Practices Act ("FDCPA"), the Uniform Commercial Code ("UCC"), and the Fair Credit Billing Act ("FCBA" and "Count III");[6] [id. at ¶ 3;]

---

merits of the controversy," and is immediately appealable upon its entry.  Wise, 130 Hawai`i at 16, 304 P.3d at 1197 (quoting MDG Supply, Inc. v. Diversified Investments, Inc., 51 Haw. 375, 380, 463 P.2d 525, 528 (1969)).  Any subsequent proceedings such as orders confirming sale are thus separately appealable from the decree of foreclosure, and fall within the second part of the bifurcated proceedings.  Id. . . .

Nationstar Mortg., LLC v. Lee, NO. CAAP-17-0000788, 2018 WL 4627280, at *2 (Hawai`i Ct. App. Sept. 27, 2018) (footnote omitted).  According to the Foreclosure Docket, Plaintiffs did not file a notice of appeal from either the Foreclosure Judgment or the Foreclosure Sale Judgment.

    [6] Plaintiffs refer to both the FDCPA and "the Hawaii Fair Debt Collection Practices Act."  [Complaint at ¶ 3.]  Because the State of Hawai`i does not have its own Fair Debt Collection Practices Act, any references in the Complaint to "the Hawaii
(. . . continued)

-a claim seeking to invalidate the foreclosure and the
    foreclosure sale because the Foreclosure Action was an
    unlawful debt collection proceeding under the FDCPA
    ("Count IV"); [id. at ¶ 4;]

-a claim seeking to invalidate the foreclosure and the
    foreclosure sale because Plaintiffs allege Wilmington
    submitted perjured testimony in the Foreclosure Action and
    "provid[ed] false, misleading and/or deceptive information,
    and misrepresenting the character, amount and/or legal
    status of the alleged debt for the purpose of harassment
    and coercion," in violation of the FDCPA ("Count V"); [id.
    at ¶ 5;]

-a claim seeking to invalidate the foreclosure and the
    foreclosure sale because Plaintiffs never "agree[d] to any
    changes, notices, alterations, amendments or the like"
    ("Count VI") [id. at ¶ 6;] and

-a claim seeking to invalidate the foreclosure and the
    foreclosing sale because Wilmington did not have standing
    to foreclose, since it did not have a certified and
    verified copy of the Note ("Count VII"), [id. at ¶ 7.

These causes of action essentially seek to undo the Foreclosure

Decision and the Foreclosure Sale Decision (that is, to reverse

the Foreclosure Judgment and the Foreclosure Sale Judgment

entered in the Foreclosure Action).  Plaintiffs did not appeal

either the Foreclosure Judgment or the Foreclosure Sale Judgment

within the time required by Haw. R. App. P. 4(a)(1).  Both state

Fair Debt Collection Practices Act" are liberally construed as
references to the FDCPA.
    The version of the UCC that was adopted by the State of
Hawai`i is codified in Haw. Rev. Stat. Chapter 490.  "Article 3
of the UCC applies to negotiable instruments such as
[Plaintiffs'] Note."  See Bank of New York Mellon v. Spielman,
NO. CAAP-15-0000648, 2020 WL 588139, at *3 (Hawai`i Ct. App.
Feb. 6, 2020).  Any references in the Complaint to the UCC are
liberally construed as references to Chapter 490.

court judgments are therefore final judgments.  <u>See</u> <u>E. Sav.</u>
<u>Bank, FSB v. Esteban</u>, 129 Hawai`i 154, 160, 296 P.3d 1062, 1068
(2013) ("under Hawai`i law, there was a final judgment on the
merits when the time to appeal the Foreclosure Judgment expired"
(citation omitted)).  Plaintiffs are thus barred from trying to
appeal the Foreclosure Action by pursuing these claims before
this Court.

          Based on the <u>Rooker</u>-<u>Feldman</u> doctrine, there are no
genuine issues of material fact, and Wilmington is entitled to
judgment as a matter of law as to all of the claims listed
above.  <u>See</u> Fed. R. Civ. P. 56(a) ("The court shall grant
summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law.").

          However, in addition to the claims identified above,
Count II is also liberally construed as a wrongful foreclosure
claim, and Counts III, IV and V are also liberally construed as
claims alleging violations of the statues described therein.  As
to the portion of Count III based on the Hawai`i UCC, Plaintiffs
allege violations of Haw. Rev. Stat. §§ 490:3-302 and 490:3-205.
[Complaint at ¶ B.]  Section 490:3-302 is titled "Holder in due
course," and it addresses when the holder of an instrument, such
as Plaintiffs' Note, is entitled to enforce the instrument.
Section 490:3-305 is titled "Defenses and claims in recoupment,"

12

and it addresses when the person who is obligated under the instrument has defenses to the enforcement of the instrument. Thus, even though the Foreclosure Decision does not expressly address the Hawai`i UCC, Plaintiffs' Hawai`i UCC claims in this case seek to undo the rulings in the Foreclosure Decision that: Wilmington was entitled to enforce the Note by foreclosing upon the Mortgage; and Plaintiffs did not have a defense to the foreclosure.  Because allowing Plaintiffs to pursue their Hawai`i UCC claims in this case would constitute an appeal from the Foreclosure Judgment, the Rooker-Feldman doctrine bars those claims.  Wilmington is therefore entitled to judgment as a matter of law on Plaintiffs' claims alleging violations of the Hawai`i UCC.

In contrast, Plaintiffs' wrongful foreclosure claim, their FDCPA claims, and their FCBA claim do not directly challenge either the Foreclosure Judgment or the Foreclosure Sale Judgment.  Although related to the issues in the Foreclosure Action, the issues presented in those claims are not "inextricably intertwined" with the issues in the Foreclosure Action, and therefore they do not trigger preclusion under the Rooker-Feldman doctrine.  For instance, the portion of Count II alleging a wrongful foreclosure claim contends the commissioner in the Foreclosure Action refused to accept the silver coin that Plaintiffs attempted to bid for the Property at the public

auction, thereby preventing them from bidding.  [Complaint at ¶ 2.]  This portion of Count II may not be seeking to undo either the Foreclosure Judgment or the Foreclosure Sale Judgment because Plaintiffs may only be seeking damages for the allegedly wrongful foreclosure, as opposed to the return of the Property.  Thus, it is an independent claim not precluded by the Rooker-Feldman doctrine, "though similar or even identical to issues aired in state court, [it] was not the subject of a previous judgment by the state court."  See Cooper v. Ramos, 704 F.3d 772, 778 (9th Cir. 2012) (citation omitted).  Similarly, because neither the FDCPA nor the FCBA was the subject of litigation in the Foreclosure Action, the Rooker-Feldman doctrine does not apply to the portions of Counts III, IV, and V alleging violations of those statutes.

   B.   ***Res Judicata* Doctrine**

        Wilmington also asserts that the *res judicata* doctrine precludes Plaintiff's claims based on the Foreclosure Judgment and the Foreclosure Sale Judgment.[7]

             Federal courts look to the forum state's law
             to determine the preclusive effect of a state
             court judgment.  Migra v. Warren City Sch. Dist.
             Bd. of Educ., 465 U.S. 75, 81 (1984) ("It is now

--------

        [7] This district court has recognized that the Hawai`i courts utilize the term "claim preclusion" instead of *res judicata*. Kawelo v. Nationstar Mortg. LLC, Civ. No. 18-00096 JMS-KSC, 2018 WL 4354295, at *3 n.4 (D. Hawai`i Sept. 12, 2018) (citing Bremer v. Weeks, 104 Haw. 43, 53 n.14, 85 P.3d 150, 160 n.14 (2004)).

> settled that a federal court must give to a
> state-court judgment the same preclusive effect
> as would be given that judgment under the law of
> the State in which the judgment was rendered.").
> To establish claim preclusion under Hawaii law,
> Defendant has "the burden of establishing that
> (1) there was a final judgment on the merits,
> (2) both parties are the same or in privity with
> the parties in the original suit, and (3) the
> claim decided in the original suit is identical
> with the one presented in the action in
> question." Bremer v. Weeks, 104 Haw. 43, 54, 85
> P.3d 150, 161 (2004). . . .

Kawelo, 2018 WL 4354295, at *4.  Plaintiffs and Wilmington were

parties in the Foreclosure Action.  Further, as discussed with

regard to the Rooker-Feldman doctrine: the Foreclosure Judgment

and the Foreclosure Sale Judgment are final judgments on the

merits; and Plaintiffs' claims in this case – with the exception

of their wrongful foreclosure claim, their FDCPA claims, and

their FCBA claim – present claims that were decided in the

Foreclosure Action.  Because all three of the claim preclusion

requirements are satisfied, Wilmington is entitled to judgment

as a matter of law as to all of Plaintiffs' claims, except for

their wrongful foreclosure claim and their FDCPA and FCBA

claims.

        Because Plaintiffs' wrongful foreclosure claim, the

FDCPA claims, and the FCBA claim present claims that were not

decided in the Foreclosure Action, *res judicata*/claim preclusion

is inapplicable to those claims.

C.    **Summary Judgment Ruling**

        Wilmington is entitled to summary judgment based on
the Rooker-Feldman doctrine and *res judicata*/claim preclusion as
to the following claims: Count I; Count VI; Count VII; and the
portions of Counts II, III, IV, and V that seek to undo the
results of the Foreclosure Action.  The Motion is granted as to
those claims.  The Motion is denied, insofar as the Court
concludes that the Rooker-Feldman doctrine and *res
judicata*/claim preclusion do not apply to the following claims:
the portion of Count II alleging a wrongful foreclosure claim;
the portion of Count III alleging violations of the FDCPA and
the FCBA; and the portions of Counts IV and V alleging
violations of the FDCPA.

**III. Statutory Claims**

        Wilmington did not specifically move for summary
judgment on any issue beyond the Rooker-Feldman doctrine and *res
judicata*/claim preclusion.  However, in the interest of judicial
economy and efficiency, this Court will address whether
Plaintiffs' statutory claims are sufficiently pled because the
defects discussed below are apparent on the face of the
Complaint.  Further, the Court will not require Wilmington to
file a motion to dismiss because the defense of failure to state
a claim can be asserted at stages beyond the motion to dismiss
stage.  See, e.g., Fed. R. Civ. P. 12(h)(2)(C) ("Failure to

16

state a claim upon which relief can be granted . . . may be raised . . . at trial.").

## A.   **FDCPA Claims**

The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The term "debt collector" does not include a creditor collecting a debt on its own behalf, and a complaint alleging a FDCPA claim must plead factual allegations showing that that the defendant is a debt collector for purposes of the FDCPA. See, e.g., Grant v. Seterus, Inc., 771 F. App'x 362, 362 (9th Cir. 2019) (citing 15 U.S.C. § 1692a(6)(F)(ii) (excluding from the definition of debt collector a creditor collecting debts on its behalf);[8] Afewerki

---

[8] Section 1692a(6) states, in pertinent part:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any
> (. . . continued)

17

v. Anaya Law Grp., 868 F.3d 771, 779, n.1 (9th Cir. 2017)
("Under the FDCPA, a creditor collecting debts on its own behalf
is not a 'debt collector.'" (citation omitted)); Schlegel v.
Wells Fargo Bank, N.A., 720 F.3d 1204, 1208 (9th Cir. 2013)
(plaintiff "must plead factual content that allows the court to
draw the reasonable inference that [the defendant] is a debt
collector" (citation and internal quotation marks omitted))).

In the instant case, Plaintiffs' Complaint does not
include factual allegations showing that Wilmington is a debt
collector for purposes of the FDCPA.  Thus, even accepting the
Complaint's factual allegations as true, Plaintiffs fail to
state plausible FDCPA claims because they have not alleged
Wilmington is a debt collector for purposes of the FDCPA.  See
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a

---

name other than his own which would indicate that
a third person is collecting or attempting to
collect such debts.  For the purpose of
section 1692f(6) of this title, such term also
includes any person who uses any instrumentality
of interstate commerce or the mails in any
business the principal purpose of which is the
enforcement of security interests.  The term does
not include—

. . . .

(F)  any person collecting or attempting to
collect any debt owed or due or asserted to be
owed or due another to the extent such activity
. . . (ii) concerns a debt which was originated
by such person . . . .

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))).[9]  Plaintiffs' FDCPA claims must therefore be dismissed for failure to state a claim upon which relief can be granted.

The Ninth Circuit has stated that, "[u]nless it is absolutely clear that no amendment can cure the defect, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Garity v. APWU Nat'l Labor Org., 828 F.3d 848, 854 (9th Cir. 2016) (ellipse, quotation marks, and citation omitted)).  In the Foreclosure Decision, the state court found that Wilmington "is the holder of the Note which is secured by the Mortgage." [Request, Exh. C (Foreclosure Decision) at 3, ¶ 9.]  As previously stated, the Foreclosure Judgment, which was entered pursuant to the Foreclosure Decision, is a final judgment. Therefore, Plaintiffs cannot dispute that Wilmington was pursuing the Foreclosure Action to collect a debt on its own behalf, and it is absolutely clear that Plaintiffs cannot amend

---

[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

their FDCPA claims to allege that Wilmington is a debt collector

for purposes of the FDCPA.  Plaintiffs' FDCPA claims in

Counts III, IV, and V are therefore dismissed with prejudice,

*i.e.*, without leave to amend.

  B.  **FCBA**

  Plaintiffs allege Wilmington violated the "Fair Credit

Billing Act - 15 U.S.C. § 1666(3)(b)(ii)."[10]  [Complaint at ¶ B.]

Section 1666 is titled "Correction of billing errors."  However,

> the FCBA applies only to open-end consumer credit
> plans, like credit card accounts.  See 15 U.S.C.
> § 1666; see also Gray v. Am. Express Co., 743
> F.2d 10, 13 (D.C. Cir. 1984) ("The Fair Credit
> Billing Act seeks to prescribe an orderly
> procedure for identifying and resolving disputes
> between a **cardholder** and a **card issuer** as to the
> amount due at any given time.") (emphasis added).
> In fact, numerous courts have found that **mortgage
> transactions are closed-end credit transactions,
> and thus not governed by the FCBA**.  See, e.g.,
> Frank v. Wells Fargo Bank. Nat. Ass'n, No. 11-CV-
> 8035-PCT-NVW, 2011 WL 1480041, at *5 (D. Ariz.
> Apr. 19, 2011) ("Plaintiff's allegation that
> Defendants violated the FCBA by reporting
> derogatory credit ratings to national credit
> reporting agencies and failing to respond to
> Plaintiff's written complaint fails because the
> FCBA's prohibitions on reporting a defaulting
> debtor apply only in cases of open-end credit
> accounts, not mortgage transactions"); Allen v.
> Homeq Servicing Inc., No. 8-CV-1698-MMA, 2008 WL
> 2609801, at *1 (N.D. Cal. June 30, 2008) (noting
> that Section 1666(a) applies only to open end
> consumer credit plans and "the mortgage at issue

---

[10] Plaintiffs also refer to "15 U.S.C. § 1866(b) of the Fair
Credit Billing Act," [Complaint at ¶ 3,] but that appears to be
a typographic error because the FCBA is codified at 15 U.S.C.
§ 1666 through 15 U.S.C. § 1666j.

is not an open end consumer credit plan."); <u>Wilkinson v. Wells Fargo Bank MN</u>, No. 6-CV-1288, 2007 WL 1414888, at *3 n.4 (E.D. Wis. May 9, 2007) ("To the extent that Wilkinson alleges a mortgage loan in the complaint, that loan creates a closed-end credit relationship"); <u>Roybal [v. Equifax]</u>, 405 F. Supp. 2d [1177,] 1180 [(E.D. Cal. 2005)] ("Because the definition of 'creditor' as used in section 1666 only applies to creditors offering open end credit plans and Plaintiffs have not alleged that the transaction underlying this claim is based on an open end credit plan, this claim must be dismissed with leave to amend."). . . .

<u>Asper v. Wells Fargo Bank, a Nat'l Ass'n</u>, Case No.: 18cv0049-MMA (JLB), 2018 WL 2287331, at *4 (S.D. Cal. May 18, 2018) (some emphases in <u>Asper</u>).  Because Plaintiffs' credit transaction with Wilmington was a mortgage, a closed-end credit transaction, the FCBA does not apply.  Plaintiffs therefore fail to state a plausible FCBA claim, and it is absolutely clear that they cannot amend their FCBA claim to cure this defect.  Plaintiffs' FCBA claim must be dismissed with prejudice.

## IV.  <u>Wrongful Foreclosure Claim</u>

"Wrongful foreclosure is a cognizable claim under Hawai`i law, and a plaintiff may bring a wrongful foreclosure claim where: (1) the foreclosure process failed to comply with Haw. Rev. Stat. Chapter 667; and (2) the foreclosing entity did not have the right to foreclose."  <u>Galima v. Ass'n of Apartment Owners of Palm Court ex rel. Bd. of Dirs.</u>, CIVIL 16-00023 LEK-KSC, 2018 WL 6841818, at *7 (D. Hawai`i Dec. 31, 2018)

(brackets, citation, and internal quotation marks omitted); see also Hungate v. Law Office of David B. Rosen, 139 Hawai`i 394, 402-04, 391 P.3d 1, 9-11 (2017); Santiago v. Tanaka, 137 Hawai`i 137, 158, 366 P.3d 612, 633 (2016).

Because Plaintiffs cannot use their claims in this case as a substitute for an appeal from the Foreclosure Judgment, Plaintiffs cannot contend that Wilmington did not have the right to foreclose.  However, it may be possible for Plaintiffs to bring a wrongful foreclosure claim alleging that the foreclosure did not comply with the requirements of Chapter 667.  Plaintiffs allege that, at the October 25, 2018 public auction of the Property, the commissioner improperly prevented them from bidding.  [Complaint at ¶ 2.]  Plaintiffs' wrongful foreclosure claim is timely because such claims are subject to a six-year statute of limitations.  See Delapinia v. Nationstar Mortg. LLC, 146 Hawai`i 218, 225, 458 P.3d 929, 936 (Ct. App. 2020) (citing Haw. Rev. Stat. § 657-1(4)).  However, Count II does not identify the provision or requirement of Chapter 667 that was allegedly violated in the public auction, nor does the Complaint allege the result of the auction would have been different if Plaintiffs had been allowed to bid.  The Complaint therefore fails to plead a plausible wrongful foreclosure claim, and that portion of Count II must be dismissed.  However, because this Court cannot conclude that "it

22

is absolutely clear that no amendment can cure the defect," the dismissal of Plaintiffs' wrongful foreclosure claim must be without prejudice.  See Garity, 828 F.3d at 854.

## V.   Summary and Leave to Amend

As previously stated, summary judgment is granted in Wilmington's favor as to the following claims: Count I, Count VI, and Count VII, in their entirety; and the portions of Counts II, III, IV, and V that seek to undo the results of the Foreclosure Action.  In addition, the following claims are dismissed with prejudice: the portions of Count III, IV, and V alleging FDCPA claims; and the portion of Count III alleging a FCBA claim.  Finally, the portion of Count II alleging a wrongful foreclosure claim is dismissed without prejudice.

Plaintiffs are therefore granted leave to file an amended complaint alleging only their wrongful foreclosure claim against Wilmington.  If Plaintiffs choose to file an amended complaint, they must do so by **June 10, 2020**.  Plaintiffs do not have leave to add any other parties, claims, or theories of liability.  The amended complaint must include all of the factual allegations that the wrongful foreclosure claim is based upon, even if Plaintiffs previously presented those allegations in the original Complaint.  They cannot incorporate any part of their original Complaint into the amended complaint by merely referring to the original Complaint.

23

Plaintiffs are cautioned that, if they fail to file their amended complaint by **June 10, 2020**, or if the amended complaint fails to cure the defects identified in this Order, their wrongful foreclosure claim will be dismissed with prejudice – in other words, without leave to amend.  Plaintiffs would then have no remaining claims in this district court, and the Clerk's Office would be directed to enter a final judgment in Wilmington's favor and close the case.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Wilmington's Motion for Summary Judgment, filed October 30, 2019, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED, insofar as summary judgment is granted in favor of Wilmington as to: Count I; Count VI; Count VII; and the portions of Counts II, III, IV, and V that seek to undo the results of the Foreclosure Action.  The Motion is DENIED, insofar as the <u>Rooker</u>-<u>Feldman</u> doctrine and *res judicata*/claim preclusion do not apply to the remaining claims.

However, the portions of Counts III, IV, and V alleging FDCPA claims, and the portion of Count III alleging a FCBA claim, are DISMISSED WITH PREJUDICE.  The portion of Count II alleging a wrongful foreclosure claim is DISMISSED WITHOUT PREJUDICE.  Plaintiffs are GRANTED LEAVE TO AMEND their wrongful foreclosure claim in an amended complaint.  If they

24

choose to file an amended complaint, they must do so by **June 10, 2020**, and the amended complaint must comply with the terms of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 20, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

JERALD GRAHAM, ET AL. VS. WILMINGTON SAVINGS FUND SOCIETY FSB, ETC.; CV 28-00456 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT